Judith SQUIRE, Petitioner,

v.

**PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 6, 1997.

Decided June 9, 1997.

Reargument Denied July 29, 1997.

---

Michael V. Puppio, Jr., Media, for petitioner.

James S. Marshall, Senior Assistant Counsel, Philadelphia, for respondent.

Before FRIEDMAN and FLAHERTY, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Judith Squire petitions for review of a final order of the Secretary of the Pennsylvania Department of Public Welfare (DPW) upholding as untimely the dismissal of Squire's appeal from the termination of her disability benefits received pursuant to the Act of December 8, 1959, P.L. 1718, *as amended,* 61 P.S. § 951 (Act 534).

Squire was employed at Haverford State Hospital (HSH) as a medical technologist and lab supervisor when, on November 3, 1992, she was injured by a psychiatric patient. Squire was disabled as a result of the work injury and remained out of work from the date of injury until August 1995. During most of this time, Squire received benefits pursuant to Act 534.[1]

By letter dated May 11, 1995, signed by the Director of Personnel at HSH, DPW informed Squire that it would terminate her Act 534 benefits thirty days from the date of the letter. The letter stated:

Dear Ms. Squire:

You were ordered to return to work on 5/1/95, by letter dated 4/24/95. As a result of your failure to return to work, the Department has notified PHICO Services Company to file a petition to modify/sus-

---

**1.** Act 534 was created to give employees in certain "high risk" positions the guarantee of income during periods of disability due to a job-related injury. Act 534 provides in relevant part:

any employe ... of a State mental hospital ... under the Department of Public Welfare, who is injured during the course of his employment by an act of ... any person confined in such institution ... shall be paid, by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return as an employe of such ... institution at a salary equal to that earned by him at the time of his injury.

61 P.S. § 951.

pend/terminate your workers' compensation and the Department will terminate your Act 534 benefits 30 days from the date of this letter.

You have the right to appeal the Department's decision to terminate your Act 534 benefits as provided by the Administrative Agency Law, 2PA, CSA, [sic] Sections 103 through 508. The appeal must be sent to Bureau of Personnel, Employee Benefits Section, DPW Bertolino Building, 2nd Floor, P.O. 2675 Harrisburg, PA 17105–2675. Your appeal must be filed within thirty (30) days from the date of this notice. Please indicate a telephone number where you can be reached during the day and if represented by counsel, please provide counsel's name and telephone number. Absent the receipt of a timely written appeal, the Department's action will be final. The Personnel Staff is prepared to counsel and assist you in understanding the work related injury program and may be reached at 610–526–2621.

(R.R., Attachment A.)

Squire also received a second letter scheduling a pre-disciplinary conference (PDC) for May 15, 1995, so that Squire could respond to the charge of failure to return to work as ordered. Unable to attend the PDC on May 15, 1995, Squire rescheduled it for May 25, 1995; based on a conversation with the Director of Personnel at HSH, Squire understood that any decision regarding her Act 534 benefits would be postponed until after the scheduled PDC.[2] (R.R., Letter of November 29, 1995 requesting reconsideration of order dismissing Squire's appeal as untimely; Petition for Review at paras. 8–13.)

Thirty days after the May 11, 1995 letter, without holding a prior hearing, DPW terminated Squire's Act 534 benefits. Squire ultimately appealed DPW's decision to terminate her Act 534 benefits on or about June 23, 1995; this date was within 30 days of the scheduled PDC and within 30 days of the actual termination of benefits, but was more than thirty days from the date of the May 11, 1995 letter. Consequently, by letter dated August 7, 1995, sent to the Director of DPW's Office of Hearings and Appeals (OHA), DPW requested that Squire's appeal be dismissed as untimely. OHA granted DPW's request and, by order of November 15, 1995, dismissed Squire's appeal because it was filed more than 30 days from the date of the May 11, 1995 letter. Squire sought and was granted reconsideration; however, DPW upheld OHA's decision to dismiss and, on September 13, 1996, DPW issued a final order on the merits. Squire now appeals to this court.[3]

On appeal, Squire argues that DPW violated Squire's right to due process by unilaterally terminating her Act 534 benefits without conducting a prior hearing. She notes that a recipient of Act 534 benefits has a constitutionally protected property right in those benefits, and that both the United States and Pennsylvania Constitutions prohibit the deprivation of property without due process of law, which requires an opportunity to be heard at a meaningful time and in a meaningful manner.[4] *Mathews v. Eldridge*,

---

2. However, the PDC apparently never took place because Squire attended a return-to-work conference during the last week in May. According to DPW, at the return-to-work conference, the Personnel Analyst at HSH reminded Squire that she must file any appeal regarding the termination of her Act 534 benefits within the 30 day period set forth in the May 11, 1995 letter. (R.R., December 18, 1995 letter written by DPW in response to the grant of reconsideration of November 15, 1995 order dismissing Squire's appeal as untimely.)

3. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or a necessary finding of fact is not supported by substantial evidence. *Mihok v. Department of Public Welfare*, 135 Pa.Cmwlth. 265, 580 A.2d 905 (1990).

4. There is no question that this court has held that a state employee's Act 534 benefits cannot be terminated without being afforded a prior due process hearing. *See e.g., Mayo v. Department of Public Welfare*, 680 A.2d 1 (Pa.Cmwlth.1996); *Williams v. Department of Corrections*, 164 Pa. Cmwlth. 224, 642 A.2d 608 (1994); *Mihok*. In *Mihok*, we concluded that, like benefits bestowed under the Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638, commonly referred to as the Heart and Lung Act, Act 534 benefits convey a constitutionally protected property interest to the recipient which cannot be extinguished involuntarily without conducting a full due process hearing in which the employer must establish the bases for termination of benefits under the Act. We noted the standard applied to receipt of benefits pursuant to the Heart and

424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Further, Squire points out that, under section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." Thus, Squire asserts that DPW violated her right to procedural due process with its practice here. According to Squire, the May 11, 1995 letter, stating that her Act 534 benefits will be terminated on June 11, 1995, indicated that DPW already had made the decision to terminate without convening a hearing or giving notice thereof to Squire and, thus, was clearly inadequate to qualify as an adjudication of an administrative agency. Although conceding that the letter said that Squire could appeal the decision to DPW within 30 days, Squire protests that this opportunity for appeal does

not remedy the fact that the termination decision had been made previously in violation of Squire's due process rights. We agree that Squire was not afforded the requisite due process prior to the termination of her Act 534 benefits.

Squire has cited several cases in support of her position. Although DPW has pointed out, and we agree, that these cases differ factually from the situation here,[5] the legal principle they espouse is nonetheless applicable and controlling in this case. That principle is stated in language which, in each case remains consistent. For example, in *Mihok v. Department of Public Welfare*, 135 Pa. Cmwlth. 265, 580 A.2d 905 (1990), citing *Camaione v. Borough of Latrobe*, 523 Pa. 363, 567 A.2d 638 (1989) and *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946

Lung Act and recognized that the similarity in the provisions of and purposes behind the Heart and Lung Act and Act 534 made it appropriate to adopt analyses of one for construction of the other, stating:

The Pennsylvania Supreme Court has determined in *Callahan [v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981)] and *Camaione [v. Borough of Latrobe*, 523 Pa. 363, 567 A.2d 638 (1989)] that a hearing—where each party has an opportunity to know of the claims of his opponent, hear evidence introduced against him, cross-examine witnesses, introduce evidence on his own behalf, and make argument—must be convened prior to a change in a claimant's disability status under the Heart and Lung Act. There is no reason to draw a distinction for those claimants collecting disability under the similarly drawn and similarly purposed Act 534.

*Mihok*, 580 A.2d at 908.

5. In order to support her argument, Squire attempts to analogize her case to the decisions in *Mihok* and *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981); however, both cases are factually distinguishable.

In *Mihok*, a recipient of Act 534 benefits, who failed to return to work as ordered, was placed on leave, and her Act 534 benefits were immediately terminated. The employee appealed and received a post-termination hearing before a referee; however, her appeal was denied. On further appeal to this court, we reversed. Concluding that Act 534 benefits conveyed a property interest to the recipient which could not be terminated without a due process hearing, we ruled that DPW erred in extinguishing the employee's Act 534 benefits without a prior hearing. However, unlike Squire, the employee in *Mihok* was

not given thirty days, during which time she would continue to receive Act 534 benefits, to challenge the decision to terminate.

In *Callahan*, a state police officer was receiving benefits under the Heart and Lung Act for temporary disability. It was unilaterally determined that he was no longer entitled to such benefits because his disability was no longer temporary but permanent, and, on January 5, 1978, he received a letter from the Bureau of Personnel of the Pennsylvania State Police informing him that his benefits would be terminated as of February 22, 1978. The officer immediately requested a hearing but, without being afforded the requested hearing, his benefits were terminated on the given date. The officer filed a petition for review with this court on March 3, 1978. We quashed the appeal as untimely, reasoning that, because the January 5, 1978 letter was an adjudication by the administrative agency, any appeal had to have been taken within thirty days of that date. However, on further appeal, our supreme court found that the January 5, 1978 letter was not a valid adjudication because it failed to comply with the statutory requirements of notice and an opportunity to be heard; therefore, the date of the letter had no legal significance and the officer's ability to complain to the administrative agency did not ripen until the benefits were actually terminated on February 22, 1978.

Again, Squire's attempt to analogize falls short because the letter in *Callahan*, unlike the one here, did not provide for an appeal; it stated merely that benefits would be terminated on a particular date, without offering any opportunity for recourse. In fact, despite this lack of opportunity, the claimant in *Callahan* requested a hearing well in advance of the scheduled date for termination but was not given one before his benefits were terminated on that date.

(1981), we stressed that, with regard to benefits under Act 534 and the "Heart and Lung Act," [6] a hearing *must be convened* prior to a change in status. Similarly, in *Williams v. Department of Corrections*, 164 Pa.Cmwlth. 224, 642 A.2d 608 (1994), we do not allow for termination of such benefits where an employer *offers to conduct* a hearing *if* one is requested; rather, we say that "[a]n employer cannot terminate an employee's Heart and Lung benefits without *conducting* a full due process hearing in which it establishes [one of two bases for termination]." *Williams*, 642 A.2d at 610 (emphasis added). The language used in *Callahan* is equally unforgiving. In that case, our supreme court stated that "Administrative Agency Law expressly requires an agency to supply an aggrieved party *notice of a hearing and an opportunity to be heard.*" *Callahan*, 494 Pa. at 465, 431 A.2d at 948 (emphasis added). It does not say that the agency should supply an aggrieved party the *opportunity to request a hearing in order to receive notice and an opportunity to be heard.*

▉▉▉ The duty, as described, is not to afford an employee the opportunity to ask for

a hearing; rather, the obligation is to provide notice of a hearing and the opportunity to be heard before such benefits can be terminated. DPW did not satisfy this obligation through the May 11, 1995 letter which, although informing Squire of the right to *appeal* the decision to terminate her Act 534 benefits,[7] made no mention of a pre-termination hearing.[8]

▉▉▉ Once a claimant qualifies for benefits under Act 534, that disability status cannot be changed without a due process hearing at which the basis for termination is established. It is the administrative agency that bears the burden of providing an employee with notice of a hearing and an opportunity to be heard prior to terminating Act 534 benefits, and DPW cannot satisfy this burden with the procedure used here, that is, by unilaterally determining that Squire's disability has ceased and requiring that she file a written appeal from that adverse action. Because DPW violated Squire's due process rights by terminating her Act 534 benefits without first conducting a hearing, we re-

---

**6.** Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638. This Act is untitled but is commonly referred to as the Heart and Lung Act.

**7.** Indeed, we note that an appeal is a post-adjudicative proceeding. According to the letter of May 11, 1995, Squire has the right to "appeal" DPW's decision to terminate her Act 534 benefits. However, because Squire was never afforded notice of a hearing and an opportunity to be heard prior to that decision, it clearly is invalid as an adjudication. *Callahan.* Without a valid adjudication, there is no basis for the "appeal" that DPW wants Squire to file. *Id.* On the other hand, if, as DPW maintains, the decision to terminate merely expresses DPW's intention to act in a certain manner unless some challenge is made, then it would be necessary to wait for the anticipated action before any legal basis for complaint in the form of an "appeal" would arise. *See Department of Transportation Bureau of Driver Licensing v. Majzer*, 158 Pa.Cmwlth. 626, 632 A.2d 633 (1993) (holding that appeal from notice of suspension of vehicle registration is premature where notice indicated that a vehicle was scheduled to be suspended but that the scheduled suspension could be avoided if proof were sent that financial responsibility coverage had not lapsed).

In short, no matter how we characterize the letter of May 11, 1995, Squire remains entitled to a full due process hearing. If the decision to terminate is an adjudication, it is invalid because

Squire did not receive the pre-termination hearing to which she was, and still is, entitled. If the decision to terminate is not an adjudication, Squire had no right to appeal until the termination was final. *See* 2 Pa.C.S. § 101. Here, Squire did file a timely post-adjudicative appeal from the termination of her benefits, but never received the requisite pre-termination hearing.

**8.** Compare *Mayo v. Department of Public Welfare*, 680 A.2d 1 (Pa.Cmwlth.1996), in which a letter sent to an employee informing him that his Act 534 benefits would be suspended also informed him that "if he wanted a hearing with respect to his Act 534 benefits, he should notify OHA within thirty days so that a hearing could be scheduled." *Id.* at 4. Because it was not an issue in *Mayo*, we did not comment on DPW's practice of requiring recipients of Act 534 benefits to formally request a due process hearing. We note, however, that the letter in *Mayo* clearly states that, if the employee requests one within thirty days, the claimant will receive a hearing with respect to his continued receipt of benefits. This is unlike the letter Squire received, which never expressly indicated that Squire could request a hearing, or that if she were to appeal, the decision to terminate her benefits would be stayed. The letter simply stated that the decision to terminate Squire's Act 534 benefits had been made, that termination would take place in thirty days, and that Squire had thirty days to appeal that termination.

verse DPW's order and remand the case with directions that Squire's Act 534 benefits be restored as of June 10, 1995, the date of their termination, and that OHA conduct a full due process hearing with respect to Squire's continuing entitlement to Act 534 benefits.

## ORDER

AND NOW, this 9th day of June, 1997, the order of the Secretary of the Department of Public Welfare, dated September 13, 1996, is hereby reversed, and we remand this case with directions that Act 534 disability benefits be restored to Judith Squire as of the date of their termination on June 10, 1995, and that the Office of Hearings and Appeals conduct a hearing with respect to Squire's continuing entitlement to Act 534 benefits.

Jurisdiction relinquished.