CITY OF PITTSBURGH, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (WILLIAMS), Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2002.

Decided Nov. 19, 2002.

Kimberly A. Rossman, Pittsburgh, for petitioner.

Richard J. Schubert, Pittsburgh, for respondent.

Before: COLINS, President Judge and SIMPSON, Judge and JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

The Pittsburgh City Police Department (Employer) petitions this Court for review[1] of the decision of the Workers' Compensation Appeal Board (Board) affirming the determination of the Workers' Compensation Judge (WCJ). Contrary to the Board, we hold that Employer did not illegally terminate Anthony Williams' (Claimant) benefits under the Heart and Lung Act,[2] and that Employer is entitled to a subrogation interest in Claimant's third-party settlement.

Claimant, hired by Employer as a police officer in 1989, was injured in a work-related car collision in February 1994 for which he received Heart and Lung benefits. In August 1996, Employer terminated Claimant for actions unbecoming an officer, a charge unrelated to his work-injury. On the same date, Employer ceased paying Heart and Lung benefits, but began paying Claimant workers' compensation[3] benefits, which are less than Heart and Lung benefits.

Two and one-half years after filing a corrected notice of compensation payable (NCP), during which time lower benefits were received by Claimant without objec-

---

1. Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Bey v. Workers' Comp. Appeal Bd. (Ford Electronics)*, 801 A.2d 661 (Pa.Cmwlth.2002).

2. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–38, commonly known as the Heart and Lung Act.

3. Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501—2626. On November 14, 1996, Employer filed a corrected notice of compensation payable (NCP).

tion, Employer filed a petition to modify Claimant's workers' compensation benefits on January 16, 1999, based on Claimant's January 6, 1999, third-party recovery from the car collision. Employer sought subrogation credit for Claimant's third-party $145,000.00 negligence action settlement.[4] Asserting he had been receiving non-subrogateable Heart and Lung benefits all along, Claimant objected.[5]

The WCJ denied Employer's subrogation claim and determined that, despite Employer's designation, Claimant had been receiving Heart and Lung benefits instead of workers' compensation benefits. The WCJ also concluded Employer "does not have clean hands" and "unilaterally purported to terminate the claimant's Heart and Lung benefits, in plain defiance of well-established law [an agreement between the parties or a due process hearing and decision by a Heart and Lung Act arbitrator]. It thereafter sought to take credit for such payments out of purported workers' compensation, notwithstanding the fact that case law is well-established that employers may not take such credits." WCJ Op. at p. 6.

The Board affirmed and determined the benefits paid Claimant were "in part partial payments under the Heart and Lung Act" and the WCJ did not "err as a matter of law in determining that [Employer] was not entitled to any subrogation, offset or credit of such payments." Board Op. at p. 6. This appeal followed.

Employer raises two issues for our review: whether Employer impermissibly terminated Claimant's Heart and Lung benefits upon his discharge from the police department for actions unbecoming an officer; and whether a subrogation interest exists in Claimant's third-party settlement.

## I.

◼ We conclude that the Board used an improper legal analysis when it determined Employer acted illegally in ceasing Claimant's Heart and Lung benefits. Employer was not required to afford Claimant a Heart and Lung Act hearing prior to terminating his employment for reasons unrelated to his work injury. *Camaione v. Borough of Latrobe*, 523 Pa. 363, 567 A.2d 638 (1989).

In *Camaione*, our Supreme Court determined Heart and Lung benefits can be stopped through voluntary retirement.[6] In that case, Camaione received Heart and Lung benefits after he was unable to return to work as a result of a 1975 work-related injury. Thereafter, his employer (Borough) enacted a financial responsibility resolution that required retirement of

---

4. Before the settlement, the trial court notified Employer that it was considering a motion that would affect Employer's subrogation interest. The trial court's order characterized Claimant's benefits as Heart and Lung benefits when it denied Employer's subrogation claim. Claimant alleges he accepted the settlement with the understanding that no subrogation claim by Employer could lie, and he could not recover lost wages or medical expenses he paid.

5. Heart and Lung benefits are not subject to subrogation. *Fulmer v. Pennsylvania State Police*, 167 Pa.Cmwlth. 60, 647 A.2d 616 (1994).

6. See also *Creighan v. Pittsburgh*, 389 Pa. 569, 132 A.2d 867 (1957) (claimant was a fireman at the initiation of protracted litigation, and, thus, entitled to present claim under the Heart and Lung Act); *Hasinecz v. Pennsylvania State Police*, 100 Pa.Cmwlth. 622, 515 A.2d 351 (1986) (benefits of Heart and Lung Act do not extend to former members of police force); *White v. W. Norriton Township*, 158 Pa.Super. 375, 45 A.2d 401 (1946) (dismissed police officer not covered under Heart and Lung Act).

its two oldest police officers, one of whom was Camaione. The Borough then stopped paying Camaione Heart and Lung benefits and began paying him workers' compensation benefits, along with his retirement pension check. Litigation ensued, and a WCJ determined Camaione's disability could be addressed by a lump sum payment. As a result, Camaione ceased receiving his worker's compensation check and only received his pension check, an amount less than his Heart and Lung benefits.

Camaione filed a complaint in mandamus to reinstate Heart and Lung benefits. Ultimately, our Supreme Court determined the Heart and Lung Act does not confer

> any rights upon injured officers as to the terms of their employment or that the Act in any way removes the right to hire, fire, furlough or retire which is vested in the Borough under [53 P.S. § 46190]. All that the Heart and Lung Act provides is that while an officer is a member of the police force his temporary incapacity status cannot be changed without a due process hearing. This is all *Callahan* [*v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981)] stands for and we will not read it or the Act any broader, for to do so would grant greater rights to injured officers than to actively employed officers.

523 Pa. at 369, 567 A.2d at 641. The Supreme Court decided, since Camaione did not have a right to membership in the Borough police force that differed from that of any other police officer, his retirement did not affect any property right for which a hearing was required. Thus, the Court denied relief to Camaione.

■ Similarly, Employer's conversion of Claimant's Heart and Lung benefits to workers' compensation benefits here was legal.[7] As in *Camaione*, Claimant's termination from employment removed him from the group entitled to a Heart and Lung Act due process hearing. Moreover, such a hearing could address only the permanency of Claimant's disability. *See, Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981) (necessity of providing a claimant with a Heart and Lung Act hearing to determine permanency of disability). A due process hearing pursuant to the Heart and Lung Act could not address Claimant's employment status or his entitlement to workers' compensation benefits.

## II.

■ The Board also erred when, on equitable grounds, it denied Employer a subrogation interest in Claimant's third-party settlement. In particular, the Board erred in applying an "unclean hands" analysis because Employer was entitled to cease payment under the Heart and Lung Act and initiate payments under the Workers' Compensation Act.

■ In addition, the Board's analysis is contrary to Section 319 of the Workers' Compensation Act, 77 P.S. § 671, which establishes an employer's subrogation in-

---

7. Contrary to Claimant's argument, his situation is not similar to that of the claimant in *Williams v. Dep't of Corrections*, 164 Pa. Cmwlth. 224, 642 A.2d 608 (1994). The *Williams* claimant sustained an injury in the performance of his duties, and his employer directed he return to work after it unilaterally determined he no longer suffered from his work-related injury. After the officer refused to return to work, the employer terminated his employment. This Court held the employer acted illegally by not affording claimant a due process hearing to determine if his disability had ceased. *Id.* at 611.

Here, Claimant's termination from employment had nothing to do with the status of his disability. There are no issues to adjudicate in a Heart and Lung forum.

terest. The Supreme Court in *Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.)*, 566 Pa. 420, 781 A.2d 1146 (2001),[8] held that Section 319 of the Workers' Compensation Act is "clear and unambiguous. It is written in mandatory terms and, by its terms, admits of no express exceptions, equitable or otherwise. Furthermore, it does more than confer a 'right' of subrogation upon the employer; rather subrogation is automatic." 566 Pa. at 428, 781 A.2d at 1151. The Supreme Court went on to decide "not withstanding the equitable roots and nature of subrogation, this Court cannot ignore the fact that the subrogation right at issue here does not derive from common law judicial authority but, rather, is expressly granted by the Workers' Compensation Act." 566 Pa. at 431–32, 781 A.2d at 1153.

In our subsequent opinion following the remand from the Supreme Court, we noted

[W]here, as here, the employer was not a party to the suit or settlement with the third party and did not otherwise foreclose his right to subrogation, the employe and the third party cannot deprive the employer of his full subrogation right by unilaterally designating a portion of the recovery as damages for pain and suffering. Designation of the type of damage recovered by the settlement

is not necessarily conclusive against the employer's right to subrogation for compensation paid by him under the Act. *Thompson v. Workers' Compensation Appeal Bd. (USF & G Co.)*, 801 A.2d 635, 638 (Pa.Cmwlth.2002) (quoting *Bumbarger v. Bumbarger*, 190 Pa.Super. 571, 155 A.2d 216, 219–19 (1959)).

Likewise, here, Employer was not a party to the suit or the settlement with the third party. The trial court lacked authority to bind Employer to its declaration of Claimant's benefits and to affect Employer's workers' compensation subrogation interest. The Board erred when it ratified this unwise departure from statutory subrogation.

Accordingly, we reverse the decision of the Board.

### ORDER

AND NOW, this 19th day of November, 2002, the decision of the Workers' Compensation Appeal Board in the above-captioned matter is reversed.

---

**8.** The Supreme Court filed *Thompson* on October 17, 2001, almost three weeks before the Board affirmed the WCJ's decision here. The WCJ cited our not-yet-then-vacated decision of *Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.)*, 730 A.2d 536 (Pa.Cmwlth. 1999), *vacated and remanded by Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.)*, 566 Pa. 420, 781 A.2d 1146 (2001), in support of his application of the equitable remedy of subrogation.