**Casandra OLIVER**

v.

**CITY OF PITTSBURGH, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2009.
Decided July 17, 2009.

---

Harry Stump, Pittsburgh, for appellee.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY President Judge LEADBETTER.

The City of Pittsburgh (City) appeals from the order of the Court of Common Pleas of Allegheny County (common pleas) that denied its motion for summary judgment and granted judgment on the pleadings in favor of Casandra Oliver. By granting judgment in favor of Oliver, common pleas precluded the City from asserting a subrogation lien for Heart and Lung Act [1] benefits paid to Oliver following her settlement of a civil action against a third party for injuries that she sustained in a work-related motor vehicle accident. After review, we reverse.

---

1. The act commonly referred to as the Heart and Lung Act is the Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638.

The underlying facts are not in dispute. In 1996, Oliver was injured in a motor vehicle accident while performing her duties as a City police officer. As a result, the City paid Oliver Heart and Lung Act benefits in the amount of approximately $848. In addition, Oliver pursued a civil claim against the third-party tortfeasor, which eventually settled for $2,300. Due to the City's interest in subrogating against Oliver's settlement proceeds, Oliver filed a complaint for declaratory judgment, seeking, *inter alia*, a declaration that under Section 1720 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1720, the City could not seek reimbursement from her third-party recovery for benefits it paid pursuant to the Heart and Lung Act. In concluding that the City was not entitled to subrogate against Oliver's recovery, common pleas compared the Heart and Lung Act with the Workers' Compensation Act,[2] examined the changes to the statutory scheme for coordination of benefits following amendments to the MVFRL by Act 44 of 1993,[3] and considered various decisions of this court addressing the issue. While we engage in a similar analysis, we reach a contrary conclusion. In doing so, we reaffirm our decision in *Brown v. Rosenberger*, 723 A.2d 745 (Pa.Cmwlth.1999).

Before addressing the arguments on appeal, we review the relevant statutory framework and decisional law. To begin, we note that the Workers' Compensation Act provides compensation for temporary and permanent injuries " 'arising in the course of one's employment and related thereto.' " *Allen v. Pa. State Police*, 678 A.2d 436, 437–38 (Pa.Cmwlth.1996) [quoting Section 301(c) of the Act, 77 P.S. § 411(1)]. The Heart and Lung Act provisions are more limited, however, permitting recovery only for a specified class of workers who sustain temporary injury " 'in the performance of one's duties.' " *Id.* at 438 [quoting Section 1 of the Act, 53 P.S. § 637(a) (emphasis deleted)].

■ In *City of Erie v. Workers' Compensation Appeal Board (Annunziata)*, 575 Pa. 594, 838 A.2d 598 (2003), our Supreme Court compared the Heart and Lung Act and the Workers' Compensation Act, particularly noting that the Workers' Compensation Act is similar to accident insurance and seeks to provide compensation commensurate with damage from accidental injury "as a fair exchange for relinquishing every other action against the employer." *Id.* at 601, 838 A.2d at 602 (internal quotation omitted). The Act is considered remedial legislation and is liberally construed in favor of the employee. *Id.* at 601–02, 838 A.2d at 602. However, under the Act, compensation for earnings loss is limited to 66 ⅔ of an employee's average weekly wage, which limitation "serves to [ameliorate the] potential unfairness to employers." *Id.* at 602, 838 A.2d at 602–03.

■ On the other hand, the Heart and Lung Act, which primarily covers police work, firefighting, and other jobs involving public safety, was created to "ensure that, if these employees were injured or otherwise disabled in the course of carrying out their hazardous duties, they would be guaranteed continued full income until their return to duty." *Id.* at 602, 838 A.2d at 603 (internal quotation and emphasis omitted). Unlike the Workers' Compensation Act, enactment was motivated by the best interest of the public employer, *i.e.*, the promise of full income to employees in a hazardous industry could serve to attract qualified individuals to the profession. *Id.* at 602–03, 838 A.2d at 603. Unlike the Workers' Compensation Act, the Heart

---

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

**3.** The Act of July 2, 1993, P.L. 190 (often referred to as Act 44).

and Lung Act is strictly construed. *Id.* at 603, 838 A.2d at 604. In addition, the Act contemplates the current receipt of workers' compensation: "[N]othing in the Workers' Compensation Act eliminates the responsibility of an employer to pay workers' compensation to an injured employee who is receiving Heart and Lung benefits.... The [employer's] obligation to pay Heart and Lung benefits is concurrent with, not in lieu of, its obligation pursuant to the workers' compensation scheme." *Id.* at 605, 838 A.2d at 604–05 (quotation, citation and emphasis omitted). However, any workers' compensation received by an employee compensated under the Heart and Lung Act must be turned over to the employer. Section 1 of the Heart and Lung Act, 53 P.S. § 637(a).

Finally, while the Workers' Compensation Act provides the employer with the express right to subrogate against its employee's third-party recovery to the extent of benefits paid, no similar right is provided for in the Heart and Lung Act.[4] Notwithstanding the lack of express statutory authority to subrogate, an employer's right to subrogate has been recognized at common law. *See Fulmer v. Pa. State Police,* 167 Pa.Cmwlth. 60, 647 A.2d 616 (1994) [citing *Topelski v. Universal South Side Autos, Inc.,* 407 Pa. 339, 180 A.2d 414 (1962); *Philadelphia v. Philadelphia Rapid Transit Co.,* 337 Pa. 1, 10 A.2d 434 (1940)].

While an employer's right to subrogation under the Workers' Compensation Act is otherwise absolute, *see Thompson v. Workers' Compensation Appeal Board (USF&G),* 566 Pa. 420, 781 A.2d 1146 (2001), prior to 1993 and the passage of Act 44, the MVFRL provided an exception to an employer's right to subrogate against an employee's third-party recovery. Specifically, the MVFRL precluded an injured employee from recovering in a third-party tort action amounts he or she received pursuant to the Workers' Compensation Act, and an employer was precluded from subrogating against its employee's tort proceeds to recover amounts paid as workers' compensation. *See former* 75 Pa.C.S. §§ 1720 and 1722; *see also Hannigan v. Workers' Comp. Appeal Bd. (O'Brien Ultra Serv. Station),* 860 A.2d 632 (Pa. Cmwlth.2004); *Fulmer.* Specifically, former Section 1720 of the MVFRL provided:

> In actions arising out of the ... use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 [relating to, inter alia, the minimum required medical benefits], 1712 [relating to availability of, inter alia, medical, income loss, accidental death and funeral benefits], or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits).[5]

Former Section 1722 provided, in turn:

> In any action for damages against a tortfeasor ... arising out of the ... use

---

4. An employer's right to subrogation stems from Section 319 of the Workers' Compensation Act, 77 P.S. § 671, which provides: "Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this [Act] by the employer...."

5. Section 1719(a) provides that:

> Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in [sections 1711, 1712(1) and (2) or 1715] shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided

of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

Thus, we have observed that under the former statutory scheme, the "obvious legislative intent, was to mandate that the ultimate burden for payment of compensation payments remain with Workers' Compensation insurance and not be passed on to the automobile insurance carrier...." *Hannigan*, 860 A.2d at 636 (internal quotation and citation omitted).

However, with Act 44, the legislature concurrently repealed Sections 1720 and 1722 with respect to the receipt and payment of workers' compensation benefits.[6] As a result, "in an action involving an automobile post-Act 44, an employee's third-party recovery is not reduced by the amount of workers' compensation benefits received, and the workers' compensation carrier has the right to subrogate against any benefits the claimant receives in connection with the third-party action." *Id.* Consequently, "the General Assembly preserved a scheme which allowed claimants to be made whole but prevented their double recoveries, while shifting the ultimate burden from innocent employers and their carriers to responsible tortfeasors and those insurers who pay in their stead." *Id.*

As to the relevant decisional law, we first turn to *Fulmer*. There, a state trooper commenced a declaratory judgment action in this court to determine whether former Section 1720 of the MVFRL precluded the State Police from seeking reimbursement from his tort recovery for benefits paid under the Heart and Lung Act. The petitioner argued that Heart and Lung Act benefits fell within the catch-all phrase "or benefits paid or payable by a program, group contract or other arrangement."[7] We agreed that Section 1720 applied to such benefits, stating:

> [W]e believe that Heart and Lung Act benefits fall within the "benefits in lieu thereof paid or payable" [which was the statutory language that was in effect when the petitioner was injured and commenced his civil action] language of

in section 1711, 1712 or 1715 or workers' compensation.

75 Pa.C.S. § 1719(a). As defined, the term "program, group contract or other arrangement" "includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa.C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations)." *Id.* at Section 1719(b).

6. Specifically, Section 25(b) of Act 44 provided that: "The provisions of 75 Pa.C.S. §§ 1720 and 1722 are repealed insofar as they relate to workers' compensation payments or other benefits under the Workers' Compensation Act."

7. At both the time of Fulmer's injury and the commencement of his civil action, Section 1720 actually provided: "In actions arising out of the ... use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under [section 1711, 1712, or 1715] or *benefits in lieu thereof paid or payable.*" (Emphasis added). The "benefits in lieu thereof" language was amended in 1990 by the Act of February 7, 1990, P.L. 11. We opined that the subsequent change in language was merely a clarification rather than an alteration and, therefore, not critical to the ultimate analysis. *Fulmer*, 647 A.2d at 619.

this section. Benefits received under the Heart and Lung Act effectively replace workmen's compensation benefits for those employees covered by its provisions. These benefits provided petitioner with a full rate of salary during his temporary incapacity and required him to turn over all workmen's compensation benefits he received to the [State Police]. 53 P.S. § 637(a). On its face, the contested language of Section 1720 attempts to include all those potential benefits which may have been too numerous to mention. Furthermore, it is a well-recognized rule that the Financial Responsibility Law is to be liberally construed.

647 A.2d at 619 (citation and quotations omitted). Accordingly, we concluded that, as with workers' compensation benefits, Section 1720 barred an employer from seeking reimbursement for Heart and Lung Act benefits paid to a claimant. We specifically acknowledged the changes wrought by Act 44 and declined to express any opinion as to the effect that Section 25(b), which partially repealed Sections 1720 and 1722 with respect to workers' compensation benefits, had on the issue. *See Fulmer,* 647 A.2d at 618 n. 3.

Following the passage of Act 44, the court had the opportunity to address the same issue in *Brown.* There, Brown, a state trooper, was injured in a car accident while performing her duties in 1995. The Commonwealth paid Brown Heart and Lung Act benefits during her incapacity. Brown was also eligible to receive workers' compensation and those benefits were paid over to the Commonwealth. Brown, seeking to plead, prove and recover the amounts paid under the two statutes in her civil action against the other driver, argued before common pleas that since Act 44 restored an employee's right to recover workers' compensation benefits in a third-party action as well as an employer's right to subrogate against that recovery, the Commonwealth should be treated identically to a workers' compensation carrier with respect to benefits paid under the Heart and Lung Act. The defendant driver argued, however, that Act 44's repealer applied only to workers' compensation benefits and, therefore, Brown could not recover any benefits paid under that act.

In addressing the issue, common pleas noted that, although a plaintiff historically had the right to plead loss of wages and medical bills in an action to recover damages sustained in a car accident and the employer had a concurrent right to subrogation,[8] such common law rights were supplanted by the enactment of the MVFRL in 1984, including former Sections 1720 and 1722. According to common pleas:

> Because the legislature was silent as to whether a benefit provider under the Heart and Lung Act was subject to the same preclusionary effect of [former Section 1720 of the MVFRL], the Commonwealth Court took up the issue in Fulmer.... There, [the Court] held *that "benefits received under the Heart and Lung Act effectively replace workmen's compensation benefits for those employees covered by its provisions." The clear effect of this holding was to treat Heart and Lung Act benefits the same as workers' compensation benefits for purposes of the prohibitions to subrogation and pleading as found in sections 1720 and 1722 of the MVFRL.*
>
> Given the virtual common identity accorded to the above benefits (and by necessary inference the benefit providers) can defendants now claim that the common identity be severed and disparate treatment be accorded to injured employees who have different employers[?]

---

**8.** *See Topelski v. Universal South Side Autos,* *Inc.,* 407 Pa. 339, 180 A.2d 414 (1962).

It is clear that by virtue of [the repeal of the prohibition of Sections 1720 and 1722 by Act 44], the pre–1984 principle of equity and unjust enrichment must again operate to allow recovery against a third-party tortfeasor for all losses sustained, and must also allow a benefit provider to be subrogated to any recovery of benefits. *The distinction between an employer under the Heart and Lung Act and an employer under other benefit provider schemes is irrelevant for these purposes.*

*Brown v. Rosenberger,* 40 Pa. D. & C. 4th 432, 438–39 (C.C.P.Phila.1998) (emphasis added and citation omitted), *affirmed on trial court opinion,* 723 A.2d 745 (Pa. Cmwlth.1999). As noted, this court affirmed in a published opinion based upon common pleas' reasoning.

Subsequently, a plaintiff/employee's right to recover and the employer's right to subrogate under the MVFRL for Heart and Lung Act benefits received and paid, was touched upon in the workers' compensation arena in *City of Pittsburgh v. Workers' Compensation Appeal Board (Williams),* 810 A.2d 760 (Pa.Cmwlth. 2002). There, a city police officer was injured in a work-related car accident in 1994; the officer received Heart and Lung Act benefits and procured a third-party recovery. The employer terminated the officer's Heart and Lung Act benefits following his discharge for conduct unbecoming an officer and began payment of workers' compensation benefits. Employer then sought to subrogate against the third-party recovery via a modification petition, which the claimant objected to on the grounds that the employer was not entitled to reimbursement for benefits paid pursuant to the Heart and Lung Act.[9]

The WCJ denied the modification petition, concluding that the officer had been receiving Heart and Lung Act benefits rather than workers' compensation benefits. Presumably, this conclusion stemmed from the WCJ's conclusion that the employer improperly unilaterally terminated Heart and Lung Act benefits without a due process hearing. The Board affirmed. On appeal, we addressed whether the employer had improperly terminated the Heart and Lung Act benefits upon the office's discharge and whether employer had an enforceable subrogation interest in the third-party recovery. In addressing these arguments, we noted in a footnote, without further discussion that, "Heart and Lung benefits are not subject to subrogation. [*Fulmer,* 167 Pa.Cmwlth. 60, 647 A.2d 616 (1994).]" *See Williams,* 810 A.2d at 762 n. 5. We did not discuss the Act 44 amendments to the MVFRL, nor that we had reached a contrary conclusion in *Brown.* Ultimately, we concluded that the employer had not improperly terminated Heart and Lung Act benefits and that the Board had erred in affirming the denial of the employer's modification petition on equitable grounds, *i.e.,* unclean hands in unilaterally terminating benefits. We further noted that subrogation was permissible, citing Section 319 of the Workers' Compensation Act.

In a non-precedential opinion, the United States Court of Appeals for the Third Circuit recently followed *Brown* to conclude that the City of Wilkes–Barre had the right to subrogate against its officer's third-party recovery to the extent of Heart and Lung benefits paid. In doing so, the court considered the statutory changes resulting from Act 44, as well as *Fulmer, Brown* and *Williams. See In re Cole,* No.

---

**9.** Common pleas apparently considered employer's right to subrogate but ultimately concluded no such right existed because Heart and Lung Act benefits were involved. *Williams,* 810 A.2d at 762 n. 4.

08–1412, 2009 WL 1090329 (3d Cir.2009). The court acknowledged *Williams,* but noted that the aforesaid statement was only a conclusory footnote upon which the holding did not depend.

■ With the above legal framework in mind, we now turn to the arguments on appeal. The City contends that for purposes of construing the MVFRL and an employer's right of subrogation, Heart and Lung Act benefits must be given the same effect as workers' compensation benefits. According to the City, the similar purpose of the two benefit schemes as well as our decisional law requires consistent treatment. We agree.

Despite the differences in qualification, amount and duration of coverage, each benefit scheme essentially provides an employee with payment of medical bills and compensation for an injury sustained in connection with his work, where the employee has been required to relinquish common law rights against the employer. Moreover, if a disabled employee no longer qualifies for Heart and Lung Act benefits, either because his injury has become permanent or he is discharged from employment for wrongful conduct, workers' compensation will continue if the employee continues to suffer an earnings loss as a result of his injury. Finally, the similar nature and purpose of the two benefits is evidenced by the coordination provision set forth in Section 637 of the Heart and Lung Act. While an employee is entitled to concurrent receipt of both benefits, any workers' compensation received must be remitted to the employer as long as the claimant is receiving benefits pursuant to the Heart and Lung Act. Thus, the statutory provisions alone provide no reasonable basis for inconsistent treatment with respect to the employer's right to subrogate against a third-party recovery.

Moreover, notwithstanding the acknowledged differences in the statutory schemes, our decisional law has also recognized that for purposes of an employer's right to subrogate, benefits paid under the Heart and Lung Act should be treated in the same manner as payments made pursuant to the Workers' Compensation Act. For instance, in *Philadelphia Rapid Transit Company,* our Supreme Court acknowledged the city-employer's common law right of subrogation for Heart and Lung Act benefits paid to firemen injured in a motor vehicle accident. In doing so, the Court described the benefits as: "The sums here paid by the city to the firemen were not strictly speaking wages. They were in the nature of disability compensation, similar to workmen's compensation payments and payments under an accident insurance policy and should be treated in the same manner." 337 Pa. at 4, 10 A.2d at 435. *Accord Potoczny v. Vallejo,* 170 Pa.Super. 377, 85 A.2d 675 (1952).

Similarly, as we noted above, for purposes of construing an employer's right to subrogate under the MVFRL, we concluded in *Fulmer* that Heart and Lung Act benefits constituted "benefits in lieu [of workers' compensation]" because they "effectively replace workmen's compensation benefits for those employees covered by its provisions. [They] provide [employees] with a full rate of salary during [a] temporary incapacity and require [the employee] to turn over all workmen's compensation benefits [received]. . . ." 647 A.2d at 619. Subsequently, in *Brown,* this court agreed with common pleas' observation that *Fulmer* demonstrates that Heart and Lung benefits should be treated the same as Workers' Compensation benefits for purposes of Sections 1720 and 1722 of the MVFRL. 723 A.2d at 747. Notably, our affirmance on the basis of common pleas' opinion in *Brown* also indicated agreement with common pleas' conclusions that: (1) Act 44 restored the pre–1984 principles of equity and unjust enrichment, which allow recovery against a third-party tortfeasor

for all losses sustained and a corresponding right in the benefit provider to subrogate against any recovery; (2) any distinction between employers providing benefits under the two statutory schemes is irrelevant to enforcement of these principles; and (3) the General Assembly's failure to include Heart and Lung benefits in Act 44's repeal did not command a different conclusion. Finally, it bears noting that in a different context, former Chief Justice Cappy, in his concurring and dissenting opinion in *City of Erie*, recognized the two statutes' similarity:

> [B]oth the Heart and Lung Act and the Workers' Compensation Act relate not only to the same person, but also to the same thing-compensation for a work-related injury. Thus, the two statutes are in *pari materia*. Moreover, the Legislature clearly intended the two statutes to be construed together in a consistent fashion by the fact that the Heart and Lung Act, by its terms, specifically recognizes a police officer's concurrent receipt of benefits under the Workers' Compensation Act.

575 Pa. at 610, 838 A.2d at 607–08. Finally, following *Brown*, the Third Circuit stated in *In re Cole*:

> We agree with *Brown's* reasoning, which comports, moreover, with the purpose of subrogation as stated in Pennsylvania case law:
>
> > "The rationale for the right of subrogation is threefold: to prevent double recovery for the same injury by the claimant, to insure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negligence.... Subrogation is just, because the party who caused the injury bears the full burden; the employee is made 'whole,' but does not recover more than what he requires to be made whole; and

the employer, innocent of negligence, in the end pays nothing."

*Hannigan v. Workers' Comp. Appeal Bd. (O'Brien Ultra Serv. Station)*, 860 A.2d 632, 635 (Pa.Cmwlth.2004) (internal quotations omitted). As *Fulmer* recognized, HLA and WCA wage and medical benefits are similar for the purposes of subrogation and pleading under Sections 1720 and 1722 of the MVFRL. The HLA and WCA both ensure that the employees they cover receive lost wages and medical benefits after suffering an injury that prevents them from working for some period of time. Where the employee may seek HLA benefits from a third-party in a tort action, the purpose of subrogation has as much pertinence for HLA benefits as it does for WCA benefits. After reviewing Pennsylvania case law, we conclude that Section 1722 does not bar Cole from pleading HLA payments in his personal injury action, and Section 1720 does not bar the City from asserting an equitable right of subrogation against Cole's tort recovery.

*Id.* 2009 WL 1090329 at *4 (unpublished opinion).

Not only does our appellate law support the conclusion that the City is entitled to subrogate against Oliver's third-party recovery, but general rules of statutory construction command the same conclusion. As our rules of statutory construction make clear, in ascertaining legislative intent, we presume that the legislature did not intend an absurd or unreasonable result, that the legislature intended to favor the public interest as opposed to any private interest and did not intend a result violative of constitutional rights. *See* 1 Pa.C.S. § 1922; *Pa. Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84 (1995).

Applying these principles, we conclude that the legislature intended Act 44 to

apply to Heart and Lung benefits as well as Workers' Compensation benefits. Otherwise, an arbitrary distinction would be drawn between claimants and employers based upon whether benefits were paid under the Workers' Compensation Act or the Heart and Lung Act.[10] Obviously, both public and private employers are liable for the payment of workers' compensation benefits. However, unlike workers' compensation, only public employers pay Heart and Lung benefits. Therefore, if Act 44 is construed to permit only an employer that has paid workers' compensation to subrogate against a third-party recovery for injuries sustained in a motor vehicle accident, the innocent public employer (and the public fisc), which has paid Heart and Lung benefits under the same circumstances, will bear the burden to make payments necessitated by the actions of a negligent private party. Inasmuch as the rationale underlying both subrogation and Act 44 is to shift the burden from innocent employers to responsible tortfeasors, *Hannigan,* construing the legislative scheme in a manner which protects and favors private interests but not that of the public is contrary to our rules of statutory construction and renders an unreasonable result.

■ Finally, we rendered our decision in *Brown* more than ten years ago. The legislature's failure to make any changes to the statutory scheme following our decision in *Brown* creates the presumption that our interpretation was in accord with legislative intent. *See Mosley v. Workers' Comp. Appeal Bd. (City of Pittsburgh),* 937 A.2d 607 (Pa.Cmwlth.2007) and cases cited therein.

■ Accordingly, we reaffirm our decision in *Brown* and conclude that common pleas erred in declaring that the City was precluded from subrogating against Oliver's third-party recovery. In doing so, we expressly disavow any suggestion to the contrary in *Williams,* 810 A.2d 760. In reaching this conclusion, we also reject Oliver's contention that Section 23 of Act 44 protects her recovery from the City's subrogation interest. Section 23 provides that:

> The Commonwealth, its political subdivisions, their officials and employees acting within the scope of their duties shall enjoy and benefit from sovereign and official immunity *from* claims of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits [emphasis added].[11]

---

**10.** Although not raised in this case, we note that we can envision no rational basis for drawing such disparate treatment, implicating constitutional concerns.

**11.** Section 23 appears in the Statutory and Historical Notes to Section 305 of the Workers' Compensation Act, 77 P.S. § 501 [pertaining to "Insurance of payment of compensation by employer; appeal from denial of exemption; effect of failure to insure; penalty; remedies for failure to secure payment"].

Ignoring the inconsistency of this assertion with Oliver's earlier argument (that is, statutory language referring to "workers' compensation" cannot be construed to include benefits paid under the Heart and Lung Act), we note that the only support cited for this contention is *Cole v. Sheils,* 371 B.R. 93 (Bkrtcy. M.D.Pa.2007), wherein the Bankruptcy Court concluded that pursuant to Section 23, a city-employee, who received compensation under the Heart and Lung Act for injuries sustained in a work-related motor vehicle accident, was immune from the city-employer's claim of subrogation with respect to monies recovered in a third-party action. On appeal, the United States District Court noted that, while it did not necessarily disagree with the Bankruptcy Court's conclusion, it was affirming on different grounds. *See City of Wilkes–Barre v. Sheils,* 382 B.R. 871 (M.D.Pa.2008). On further appeal, the United States Court of Appeals for the Third Circuit vacated on the basis of this court's decision in *Brown v. Rosenberger,* 723 A.2d 745 (Pa.Cmwlth.1999).

Clearly, Section 23 does not preclude an employer from subrogating against its own employee's third-party recovery.[12] If it did, only governmental employees would be mentioned in the section; inclusion of governmental employers would be purely meaningless. Rather, Section 23 protects governmental parties from claims asserted directly against them for reimbursement for compensation paid as a result of the negligence of a governmental tortfeasor.

This section was recently addressed in *Fox v. Workers' Compensation Appeal Board (PECO Energy Co.)*, 969 A.2d 11 (Pa.Cmwlth.2009). There, after sustaining work-related injuries, a PECO employee commenced a civil action against the City of Philadelphia, claiming that his injuries were caused by the City's negligence. A monetary settlement agreement was reached, wherein the City also agreed to indemnify the plaintiff for any subrogation claim made by his employer. PECO then filed a petition to review compensation benefits with the workers' compensation authorities, maintaining its right to assert a subrogation lien under the Workers' Compensation Act. The claimant opposed the petition on the ground that Section 23 precluded PECO from recovering its lien. The WCJ granted the petition, concluding that Section 23 did not bar PECO's lien because it had not filed an action directly against the City. The Workers' Compensation Appeal Board affirmed. On appeal, we stated:

> Section 23 of Act 44 does not, as Claimant contends, make a governmental employer immune from subrogation. First, Claimant's argument that because he had no right to recovery against the City and, therefore, [PECO] had no sub-rogation rights, is belied by the fact that Claimant *did* file a civil action against the City and recovered. Second, granting a governmental entity "immunity from claims of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits" does not even remotely affect an *employer's* Section 319 right to seek reimbursement from a claimant from a tort recovery that the claimant received from a governmental entity for the same work-related injury that employer paid compensation. Third, by its plain language, all Section 23 of Act 44 does is provide governmental agencies with immunity from claims that failed in order to protect an employer's workers' compensation subrogation claim. Because [PECO] is seeking subrogation from *Claimant* for the $150,000 he received from the City, not from the City itself, Section 23 of Act 44 does not foreclose [PECO] from enforcing its Section 319, 77 P.S. § 671, reimbursement rights.
>
> . . . .
>
> In this case, because [PECO] is not seeking to recover subrogation lien money from the City but rather from the settlement already received by Claimant, the WCJ properly found that Claimant was required to reimburse his Employer from the tort recovery from the City for workers' compensation paid.

*Id.* at 14, 15 (emphasis in original).

Accordingly, based upon the foregoing reasoning, we conclude that the City is entitled to subrogate against Oliver's third-party recovery for the amount of Heart and Lung Act benefits paid. Therefore, common pleas' order is reversed.

---

*See Cole,* No. 08–1412 (3d Cir.2009), 2009 WL 1090329.

**12.** Indeed, Oliver's tortured construction leads to an absurd result—all public employ-ers would be precluded from subrogating against their employees' third-party recoveries, while private employer's retained the right to subrogation provided by Section 319 of the Workers' Compensation Act.

*ORDER*

AND NOW, this 17th day of July, 2009, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby REVERSED.

DISSENTING OPINION BY Judge SMITH–RIBNER.

Respectfully, I dissent from the decision of the majority that reverses the order of the Court of Common Pleas of Allegheny County granting the motion for judgment on the pleadings filed by Casandra Oliver (Oliver) in her declaratory judgment action and denying reimbursement to the City of Pittsburgh (City) for benefits paid to Oliver under the statute commonly known as the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638. In reversing, the majority reaffirms the erroneous decision in *Brown v. Rosenberger,* 723 A.2d 745 (Pa.Cmwlth. 1999), where this Court affirmed the trial court's order on the basis of its opinion determining that a Heart and Lung Act benefits provider had subrogation rights in the employee's tort recovery in a third-party tortfeasor lawsuit arising out of the maintenance or use of a motor vehicle.

As the majority notes, the facts are undisputed. Oliver was injured in a motor vehicle accident on December 23, 1996 during her course of employment as a police officer. She received $848.48 in Heart and Lung Act benefits during the time that she could not work and also filed a personal injury action against the third-party tortfeasor. She eventually settled for $2,300,

and thereafter the City indicated that it would seek subrogation for benefits that it paid. Oliver's attorney placed the disputed amount in escrow and filed an action for declaratory judgment and then a motion for judgment on the pleadings. The City filed its cross-motion.

The City contends that Section 25(b) of the Act of July 2, 1993, P.L. 190, No. 44 (Act 44), which partially repealed Sections 1720 and 1722 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa. C.S. §§ 1720 and 1722,[1] as they pertain to benefits under the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708, also applies to Heart and Lung Act benefits. Section 25(b) provides: *"The provisions of 75 Pa.C.S. §§ 1720 and 1722 are repealed insofar as they relate to workers' compensation payments or other benefits under the Workers' Compensation Act."* (Emphasis added.) The City contends that principles of equity and the holding in *Brown* require subrogation rights reinstated by Act 44 to be extended to Heart and Lung Act benefit providers. It asserts that payment of an officer's full salary under the Heart and Lung Act is "compensation" and therefore no different from workers' compensation and that the Heart and Lung Act and the Workers' Compensation Act are *in pari materia* as they relate to "the same class of persons or things" and accordingly should be construed together pursuant to 1 Pa.C.S. § 1932.

1. Section 1720, relating to subrogation, provides:

*In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from*

*a claimant's tort recovery with respect to workers' compensation benefits,* benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) *or benefits paid or*

■ ■

Oliver argues that Section 25(b) of Act 44 applies only to workers' compensation or other benefits paid under the Workers' Compensation Act and that Heart and Lung Act benefits are neither. The Heart and Lung Act was enacted to provide full salary to all police officers, firefighters and other law enforcement officers injured in the line of their duty who are temporarily incapacitated from performing their duties. Moreover, the Heart and Lung Act is not administered through the workers' compensation system, and in *City of Scranton v. Workmen's Compensation Appeal Board (Walsh),* 127 Pa.Cmwlth.89, 560 A.2d 937 (1989), the Court held that sums paid under that Act were not workers' compensation benefits and hence could not be modified for failure to follow up on job referrals.

Noting first that the title and preamble of a statute may be considered under 1 Pa.C.S. § 1924 in interpreting its meaning, Oliver refers to Section 1 of Act 44 stating that it amends Section 101 of the Act of June 2, 1915 (P.L. 736, No. 338), to provide that the act shall be called and cited as the Workers' Compensation Act and shall apply to all injuries occurring within the Commonwealth. Oliver adopts the statutory construction rule at 1 Pa.C.S. § 1921(b) that if the words of a statute are clear and unambiguous, as they are in Section 25(b) of Act 44, the letter of it may not be disregarded under the pretext of pursuing its spirit. Oliver cites as well to

1 Pa.C.S. § 1971(c), which states that a statute should not be construed to repeal an earlier statute unless the two are irreconcilable, and she agrees with the trial court that there is no conflict in construing Heart and Lung benefits as being exempt and workers' compensation benefits as being subject to subrogation.

In granting Oliver's motion, the trial court reasoned in part as follows:

> Even though the Heart and Lung and Workers' Compensation statutes have been similarly construed, the partial repeal of § 1720 speaks only to "workers' compensation payment [sic] or *other benefits under the Workers' Compensation Act.*" Emphasis added. There is no ambiguity in this provision. The Legislature has not repealed § 1720 with respect to Heart and Lung benefits. It is not for this Court to do so.

Trial Court opinion at 11–12. The trial court analyzed prior decisions concerning subrogation of Heart and Lung Act benefits. In *Fulmer v. Pennsylvania State Police,* 167 Pa.Cmwlth. 60, 647 A.2d 616 (1994), a state trooper was injured while riding as a passenger in a state police vehicle. He filed a third-party lawsuit when the 1984 version of Section 1720 was in effect and when the phrase that currently reads "benefits paid or payable by a program, group contract or other arrangement whether primary or excess" originally read "benefits in lieu thereof paid or

*payable by a program, group contract or other arrangement* whether primary or excess under section 1719 (relating to coordination of benefits). (Emphasis added.)

Section 1722, relating to preclusion of recovering required benefits, provides:

> In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits

under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

payable." The trooper received Heart and Lung Act benefits, and the State Police sought subrogation against his tort claim settlement. The trooper argued that clear legislative intent precluded subrogation in a motor vehicle tort claim recovery. On the other hand, while acknowledging that the Heart and Lung Act contained no specific provisions regarding an employer's right to subrogation, the State Police argued that broad considerations of equity, good conscience and unjust enrichment required that it be afforded subrogation rights in the tort recovery, citing *Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 180 A.2d 414 (1962).[2]

The Court pointed out in *Fulmer* that the MVFRL became effective October 1, 1984 and that if applicable it would supersede the prior case law where a claimant's injury arose out of a motor vehicle accident. Moreover, tort recoveries by a claimant who received workers' compensation benefits likewise would be shielded from subrogation rights based upon the assumption that the accident arose out of the maintenance or use of a motor vehicle and that the MVFRL applied as it existed before Act 44. The Court concluded that Section 1720 applied to benefits paid under the Heart and Lung Act because they qualified within the "benefits in lieu thereof paid or payable" language of that section. The Court explained:

> Benefits received under the Heart and Lung Act effectively replace workmen's compensation benefits for those employees covered by its provisions. These benefits provided petitioner with a full rate of salary during his temporary incapacity and required him to turn over all workmen's compensation benefits he received to the PSP.... On its face, the contested language of Section 1720 attempts to include all those potential benefits which may have been too numerous to mention. Furthermore, it is a "well-recognized rule that the Financial Responsibility Law is to be liberally construed."

*Fulmer*, 647 A.2d at 619 (quoting *Rimpa v. Erie Ins. Exch.*, 404 Pa.Super. 287, 590 A.2d 784, 789 (1991)). The Court rejected the State Police's attempt in *Fulmer* to defeat the plain language of Section 1720 by raising arguments based upon principles of equity, and it concluded that the statute did not permit subrogation against the tort recovery for Heart and Lung Act benefits that the trooper received. The Court's result would be the same under the 1990 amendment as well, which substituted the current language for the former "benefits in lieu thereof paid or payable."

In Oliver's case the trial court indicated that the issue of subrogation for Heart and Lung Act benefits was not addressed again until *Brown*. Quoting one statement from *Fulmer*, 647 A.2d at 619, that "[b]enefits received under the Heart and Lung Act effectively replace workmen's compensation benefits for those employees covered by its provisions," the *Brown* trial court made an unsupportable leap that Heart and Lung Act benefits were to be treated the same as workers' compensation benefits and therefore that "the pre–1984 principle of equity and unjust enrichment must again operate to allow recovery against a third-party tort-feasor for all losses sustained, and must also allow a benefit provider to be subrogated to any recovery of benefits. The distinction between an employer under the Heart and Lung Act and an employer under other benefit provider schemes is irrelevant for these purposes." *Brown v. Rosenberger*, 40 Pa. D. & C. 4th 432, 439 (1998). The trial court cited no

---

**2.** The Court mentioned a point made in *Topelski* that "Pennsylvania is the only jurisdiction that allows a government unit such rights [to subrogation] under equitable principles and in the absence of a statute conferring such right." *Fulmer*, 647 A.2d at 619 n. 4.

authority for its conclusion that equity principles must again operate to allow a Heart and Lung Act benefits provider to subrogate against a third-party motor vehicle tort claim recovery.

The trial court in Oliver's case criticized the rationale in *Brown*, noting that it undercut the intent of Section 1720 by expanding the right to subrogation to any benefits that a claimant might receive, except those separately enumerated in the MVFRL, and noting also that no ambiguity exists in the 1993 repeal of Section 1720. It relates solely to "workers' compensation payments or other benefits under the Workers' Compensation Act." Trial court Opinion at 7. Also, the Heart and Lung Act has existed since 1935, and the legislature could have repealed Section 1720 with respect to that Act had it intended to do so, but it did not.

The right of subrogation for Heart and Lung Act benefits was mentioned again in *City of Pittsburgh v. Workers' Compensation Appeal Board (Williams)*, 810 A.2d 760 (Pa.Cmwlth.2002), where a police officer was injured in a motor vehicle accident in February 1994 (after Act 44's effective date), and he received Heart and Lung Act benefits. The officer was terminated for unrelated conduct, and his benefits were converted to workers' compensation resulting in a lower payout. When the officer settled his third-party tort action, the City sought subrogation. The WCJ and the Workers' Compensation Appeal Board found that payments made by the City under the Heart and Lung Act prior to the termination were not subject to subrogation under *Fulmer*. The Court in *Williams* reversed the finding that the City improperly converted Heart and Lung Act benefits to workers' compensation, but it clearly stated in a footnote that Heart and Lung Act benefits were not subject to subrogation. No party addressed *Brown* in *Williams*.

The trial court noted the federal court determination in *City of Wilkes–Barre v. Sheils*, 382 B.R. 871 (M.D.Pa.2008), that Section 1720 of the MVFRL precluded subrogation of Heart and Lung Act benefits under the language "benefits paid or payable by a program, group contract or other arrangement" without ever referencing *Brown*. This decision however was vacated, and the case was remanded by the Third Circuit in an unpublished opinion that the majority heavily relies upon in its analysis. *See In re Cole*, No. 08–1412, 2009 WL 1090329 (3d Cir. April 23, 2009). The Third Circuit's unpublished decision is not binding on this Court, and even if the decision were binding it nevertheless could not be followed because it utterly fails to support reversal of the trial court here.

The Third Circuit suggested in *In re Cole* that a key rationale to *Fulmer's* holding no longer existed because Section 1722 of the MVFRL no longer barred an employee from recovering amounts in a third-party tort action that corresponded to workers' compensation benefits received (due to the 1993 repeal). It then went on to discuss *Brown* and agreed with its reasoning, despite the obvious fact that the trial court in *Brown* cited no authority for its decision, interpreted a statement from *Fulmer* out of context and, more fundamentally, failed to follow and/or apply the plain language of Section 1720. In addition, the Third Circuit did not discuss *Williams* except to note that its holding did not depend on the principle stated in footnote 5, *i.e.*, that Heart and Lung Act benefits are not subject to subrogation under *Fulmer*. The holding in *Williams* obviously did not depend on that principle because this Court decided that the employee's Heart and Lung Act benefits were properly converted to workers' compensation, and under settled law the employer had a right of subrogation against the third-party tort recovery there. Also, the

Third Circuit failed to recognize that the 1993 repeal provision is plain and unequivocal.[3]

Again, Section 25(b) of Act 44 reads: "*The provisions of 75 Pa.C.S. §§ 1720 and 1722 are repealed insofar as they relate to workers' compensation payments or other benefits under the Workers' Compensation Act.*" (Emphasis added.) This repeal provision says nothing about Heart and Lung Act benefits, and every relevant principle of statutory construction, if properly applied, would preclude any court from inserting benefits paid under the Heart and Lung Act into this repeal provision.

A careful analysis of relevant authority demonstrates that the Court in *Brown* misinterpreted the treatment of Heart and Lung Act benefits for subrogation purposes, and, as a result, Oliver and the trial court correctly perceived the need to overturn *Brown*. To reiterate, the Court in *Fulmer* stated that "Heart and Lung benefits fall within the 'benefits in lieu thereof paid or payable' language" of Section 1720. *Id.*, 647 A.2d at 619. The Court recognized that Section 1720 should be liberally interpreted and indicated that on its face it sought to include "potential benefits which may have been too numerous to mention." *Id.* Yet of all the benefits to be included in Section 1720, the legislature repealed that section and Section 1722 only "insofar as they relate to workers' compensation payments or other benefits under the Workers' Compensation Act." Section 25(b) of Act 44.

It is well settled in statutory construction jurisprudence that implied repeals of statutes are not favored in the law. 1 Pa.C.S. § 1971(c); *In re Delinquent Tax Sale*, 83 Pa.Cmwlth. 411, 477 A.2d 603 (1984). Section 1 of Act 44 and the Section 25(b) language relate solely to the Workers' Compensation Act, and accordingly the majority violates every applicable principle of statutory construction when it expands the repeal language to include by implication benefits under the Heart and Lung Act. Also relevant to this discussion is the observation made by the Court in connection with the legislative intent in enacting Section 1720, which serves an important purpose. The Court observed the following in *Walters v. Kamppi*, 118 Pa. Cmwlth. 487, 545 A.2d 975, 978 (1988) (emphasis in original):

> The injured victim who is forced, through subrogation, to turn over his workmen's compensation source funds he has recovered from a tortfeasor may end up realizing nothing for his non-economic losses. The elimination of subrogation, thus, furthers the goal of providing *complete* compensation to the innocent victim of a motor vehicle accident.

In this context, therefore, any expansion of the repeal of Section 1720 beyond the specific language in Act 44 erodes the intended protection of innocent victims.

To conclude, the *Brown* case was decided ten years ago but has never been relied upon by this Court in any subsequent decision. It only surfaced again in the Third Circuit opinion in *In re Cole*, which ignored the plain language of the repeal statute, although that decision nevertheless is not binding on this Court. It is

---

3. Contrary to the suggestion of the concurring opinion, the Court in *Williams* in footnote 5 was stating the existing principle of law. The context may have been to explain the basis for the claimant's objection to subrogation, but the footnote 5 reference was not the claimant's interpretation of same disputed point.

Rather, it was a statement by the Court of the settled principle that Heart and Lung Act benefits are not subject to subrogation, as was clearly held in *Fulmer*. Words mean what they say, and the statement in *Williams* cannot now be contradicted.

clear that *Brown* does not carry the weight or force of controlling case authority. For the reasons expressed, the Court first should overrule *Brown* inasmuch as it was wrongly decided; second, it should conclude that *Fulmer* and *Williams* control the outcome; and lastly it should hold that the City has no subrogation rights in Oliver's third-party tort recovery pursuant to Sections 1720 and 1722 of the MVFRL. The trial court was absolutely right in its analysis and conclusions, and its order therefore should be affirmed.

CONCURRING OPINION BY Judge SIMPSON.

I concur in the thoughtful majority opinion which allows the City of Pittsburgh to assert a subrogation lien for Heart and Lung Act[1] benefits paid to Casandra Oliver. I write separately to emphasize the majority's correct handling of *City of Pittsburgh v. Workers' Compensation Appeal Board (Williams)*, 810 A.2d 760 (Pa. Cmwlth.2002).

I authored the Court's opinion in *Williams*. In a footnote I wrote, "Heart and Lung benefits are not subject to subrogation. *Fulmer v. Pennsylvania State Police*, 167 Pa.Cmwlth. 60, 647 A.2d 616 (1994)." *Id.* at 762, n. 5. The purpose of this reference was to explain the claimant's argument, not to judge its continued validity. The reference was not necessary to resolution of *Williams*, hence the relegation to a footnote. Because this reference was intended as background rather than substance, I agree that it should have no bearing in the outcome of the current case.

---

**1.** The act commonly referred to as the Heart and Lung Act is the Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638.